OPINION
{¶ 1} Appellant, E.T., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") that sought permanent custody of appellant's minor son, J.Z. Because the decision of the trial court is supported by sufficient, competent credible evidence, and because the trial court did not improperly restrict the opportunity of appellant's counsel to directly examine appellant immediately following FCCS' cross-examination of her, we affirm.
 {¶ 2} J.Z. was born on November 7, 1997 and is appellant's only child. At the time of his birth, appellant was living with her mother, B.T. The living arrangement was not harmonious, as appellant and her mother both suffered with mental health issues. Specifically, in June 1997, appellant threw a trophy at her mother, giving rise to a charge of domestic violence against appellant. The charges ultimately were resolved with appellant's entering a plea to criminal mischief and being ordered to anger management counseling through a local mental health agency.
 {¶ 3} The anger level in the household subsided for a period of time, but for the month preceding November 6, 2002, appellant's mother called the police virtually daily regarding incidents at the home. At least part of the disagreement arose out of appellant's dissatisfaction with the care her mother rendered to J.Z. On November 6, 2002, angered at seeing her son ready to enter the truck of a telephone repairman, appellant hit her mother on the head with a pan. Both parties to the argument suffered physical injury.
 {¶ 4} Appellant's mother left the home to summon the police. When the police arrived, appellant had both a shotgun and a gun at hand. Allegedly firing one of them at the police, appellant then received fire in return. At one point in her testimony, appellant stated J.Z. was in his bedroom at the time of the gunfire; at another point she stated he was with her; reports to FCCS indicated she held J.Z. hostage during the ordeal. In any case, J.Z. was in the home and at the least able to hear what was occurring, as was true during the fights that routinely broke out between appellant and her mother.
 {¶ 5} The November 6, 2002 incident gave rise to felonious assault charges against appellant, to which she entered a guilty plea that resulted in a sentence of three years incarceration. Held in custody from November 6, 2002, appellant was given 256 days of jail credit at the time of her July 2003 sentencing and is expected to be released from the Ohio Reformatory for Women in November 2005. Following her release, she anticipates spending three months in a halfway house.
 {¶ 6} On November 7, 2002, FCCS filed a complaint in the trial court, alleging J.Z. was an abused, neglected or dependent child and seeking either temporary custody or permanent commitment pursuant to R.C. 2151.353. The same day an emergency care order was granted to FCCS, and the public defender was appointment guardian ad litem for J.Z.
 {¶ 7} On March 6, 2003, J.Z. was found to be a neglected and dependent minor and was temporarily committed to the custody of FCCS. Four months later, on July 25, 2003, FCCS filed a motion for permanent custody. The matter was heard before the trial court on November 22, 2004 and November 30, 2004 and resulted in a decision, including findings of fact and conclusions of law, that awarded permanent custody of J.Z. to FCCS. Appellant appeals, assigning two errors:
 Assignment of Error One
There is insufficient credible evidence to support the judgment of the trial court which is otherwise against the manifest weight of the evidence.
 Assignment of Error Two
The trial court erred in allowing franklin county children services to call appellant as if on cross-examination and not permitting appellant to be directly examined by counsel immediately thereafter.
 {¶ 8} Appellant's first assignment of error asserts the judgment of the trial court lacks sufficient competent credible evidence to support it.
 {¶ 9} It is well recognized that the right to raise a child is a basic and essential civil right. In re Hayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to parental rights being terminated. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing. In re Thompson
(Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 10} In order to terminate parental rights, the movant must demonstrate by clear and convincing evidence that (1) termination is in the child's best interests, and (2) one of the four factors enumerated in R.C. 2151.414(B)(1) applies. In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram,
Franklin App. No. 04AP-220, 2004-Ohio-5435. It does not mean clear and unequivocal evidence and does not require proof beyond a reasonable doubt. Id.
 {¶ 11} R.C. 2151.414(B)(1) provides that a court may grant permanent custody to the movant if, as applicable here, "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parent." R.C.2151.414(B)(1)(a). In determining whether a child cannot or should not be placed with either parent within a reasonable time, the court must consider all relevant evidence, including the factors listed in R.C.2151.414(E)(1) through (16). R.C. 2151.414(E). If the court determines by clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E)(1) through (16) exists, the court shall enter a finding that the child cannot or should not be placed with either parent. Id. One factor alone will support a trial court's decision that a child cannot or should not be placed with either parent within a reasonable time. In re Keaton, Ross App. No. 04CA2785, 2004-Ohio-6210, citing In re William S. (1996), 75 Ohio St.3d 95.
 {¶ 12} According to the facts presented at the November 2004 hearing on FCCS' motion for permanent custody, a case plan was developed to assist in reunification of appellant with J.Z. Specifically in November 2002, a caseworker from the Ohio Youth Advocate Program, the agency with which FCCS contracted to provide services in this case, was assigned to J.Z.'s case. At the time, J.Z. had been in foster care for about a week or two.
 {¶ 13} The caseworker, Kristine Monroe, testified she met with appellant two times and went over the case plan with her. According to Monroe, the case plan provided that J.Z. be evaluated for an appropriate school environment and that he receive a psychological assessment, a psychiatric assessment, and counseling to address some of the incidents leading to the case opening. As to appellant, the case plan required that she complete a psychological evaluation, and if recommended, a psychiatric evaluation. It further specified that appellant complete counseling to address domestic violence and women's empowerment issues, and then complete parenting classes as well. Because at the time the case plan was developed both the father and the maternal grandmother had expressed an interest in having custody of J.Z., the plan required the grandmother to complete a psychological evaluation and both adults to participate in visitation with J.Z.
 {¶ 14} In her capacity as the caseworker, Monroe met with appellant two times, in December 2002 and March 2003. The December meeting was to obtain necessary information about J.Z. in order to administer appropriate medication to him. According to Monroe, when she first received the case, J.Z. "would make remarks about blood, make remarks about killing people. He was extremely, extremely hyperactive, pretty much impossible to control to the point where we felt that if we were not able to administer medication that he would likely end up in a residential treatment center." (Nov. 22, 2004 Tr. 53-54.) Monroe discussed the plan with appellant in detail, including the things appellant would need to do to try to be reunited with her son. Appellant expressed an interest in working through whatever issues would be necessary to achieve reunification.
 {¶ 15} Several months after the March meeting, however, appellant was sentenced to three years imprisonment as a result of the felonious assault charges involving her mother. About the same time, Monroe was removed as caseworker because the matter was staffed for permanent custody proceedings and returned to the purview of FCCS. At that time, Amanda Bachor became the caseworker.
 {¶ 16} According to Bachor, she received the case in July 2003 and met with appellant on one occasion. Bachor received letters from appellant, had a telephone conversation with her, and had one conversation with a social worker at Jackson Pike. In addition, Bachor mailed to appellant case updates with the reviews, as well as a letter regarding J.Z.'s progress. In addition to the details of the case plan Monroe testified to, Bachor specified that the plan required that J.Z.'s basic needs be met, that he be in appropriate educational schooling due to his special needs, and that appellant establish income, stable housing, and a safe environment with utilities.
 {¶ 17} Given that evidence, the trial court determined pursuant to R.C. 2151.414(B)(1)(a) that J.Z. could not or should not be returned to his parents. The trial court premised its decision on R.C. 2151.414(E)(12), which provides that a child cannot be returned to the parent if the parent is incarcerated at the time of the motion for permanent custody or the dispositional hearing, and will be incarcerated for 18 months following the motion or the dispositional hearing. In response, appellant contends the evidence does not support the trial court's determination: even if the court considers the three months in a halfway house appellant anticipates she will require, appellant will be released less than 18 months after the dispositional hearing.
 {¶ 18} While appellant's contentions are grounded in at least some of the language of R.C. 2151.414(E)(12), they ignore the alternative posture of the statute. R.C. 2151.414(E)(12) sets forth two points in time for calculating the 18-month provision, the date the motion for permanent custody was filed and the dispositional hearing. The facts of this case reveal that appellant will not be available to J.Z. for more than 18 months after the motion for permanent custody was filed, and thus the child cannot be returned to her. In the Matter of Marrs (Dec. 28, 1998), Clark App. No. 97-CA-79 (noting that the statute phrases the dates as alternative, and concluding that "if a parent is unavailable because of imprisonment either eighteen months from the date of the initial filing or eighteen months from the date of the dispositional hearing, that parent is not fit for placement within a reasonable time under R.C. 2151.414[E]"). As Marrs explained, "[t]he construction that [the parent] advocates would encourage imprisoned parents to delay disposition for as long as possible. Any interpretation that encouraged such delays would run against both the express purposes of the statute * * * and the best interests of the children involved." Id.
 {¶ 19} Even if, however, the trial court wrongly interpreted R.C.2151.414(E)(12) to set forth alternative points in time to satisfy its provisions, the evidence supports the trial court's determination under R.C. 2151.414(E) that J.Z. cannot be returned to appellant, as appellant failed to remedy the conditions which led to J.Z.'s being placed in the custody of FCCS. See R.C. 2151.414(E)(1).
 {¶ 20} Specifically, the evidence showed that appellant failed to successfully complete any of the significant elements of her case plan, despite some progress in a few areas. In re Brofford (1992),83 Ohio App.3d 869 (concluding that "[n]on-compliance with the case plan is a ground for termination of parental rights"); In re Bailey (July 20, 2001), Geauga App. No. 2001-G-2340 (noting that non-compliance with a case plan is a basis for terminating parental rights, as "the case plan's objectives are geared toward remedying the conditions that initially caused the child's removal"). The case plan required appellant to participate in psychological and psychiatric evaluation, counseling regarding domestic violence issues as well as parenting classes, but the evidence indicates appellant completed only one phase of parenting classes at the time of FCCS' motion for permanent custody. While appellant's cross-examination of witnesses suggested the caseworkers had failed to explore what resources may be available through the Department of Rehabilitation and Correction to assist appellant in meeting the objectives of the case plan, some aspects of the case plan simply could not be completed from prison.
 {¶ 21} Nonetheless, the evidence at first blush suggests a possible alternate placement through appellant's mother or the child's father. Neither, however, provides a feasible placement according to the evidence. Specifically, Glen Ransom, the putative father, filed a motion regarding J.Z. and appeared at the first day of the evidentiary hearing on FCCS' motion for permanent custody. At that time, he requested DNA testing to conclusively determine his status as J.Z.'s father. When the trial court refused the testing at such a late date in the proceedings, Ransom left the proceedings and did not return. Nor does the evidence suggest Ransom's compliance with the terms of the case plan.
 {¶ 22} Similarly, appellant's mother is not a suitable placement for J.Z. According to the evidence, her own mental health issues preclude her rationally addressing J.Z.'s needs and, indeed, appellant does not want J.Z. placed with her mother.
 {¶ 23} Given the foregoing, the trial court properly concluded that J.Z. cannot or should not be returned to either parent within a reasonable time under R.C. 2151.414(B)(1)(a).
 {¶ 24} In addition to a finding pursuant to R.C. 2151.414(E), the court also must find by clear and convincing evidence that termination of parental rights is in the child's best interests. In determining the best interests of the child, the court is required to consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) apply in relation to the parent and child.
 {¶ 25} Here, both the guardian ad litem and the attorney for the child requested that the motion for permanent custody be granted. Although the guardian ad litem attempted to insert the child's expressed wishes into the closing argument of the hearing, the trial court precluded the argument because evidence to that effect was not presented during the hearing. Nonetheless, the evidence presented unequivocally indicates J.Z. has progressed as a result of the time spent with his foster family and is primarily bonded to a foster parent who is interested in adopting him. In addition, permanent custody is the only available avenue that provides J.Z. a secure and permanent placement. Not only does permanent custody enable FCCS to pursue adoption, but even at the time of the dispositional hearing, appellant would not be available to J.Z. for nearly 15 months due to her sentence and subsequent placement in a halfway house following her release from prison.
 {¶ 26} In the final analysis, the trial court properly concluded that termination of parental rights is in the best interests of J.Z. Appellant's incarceration precludes her from providing an adequate and permanent home for J.Z.J.Z. has progressed in foster care and has an opportunity to be adopted in a foster home where he has bonded with the parent, an opportunity that would be lost absent termination of parental rights. The trial court properly determined his best interests support granting the motion for permanent custody.
 {¶ 27} For the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 28} Appellant's second assignment of error asserts the trial court erred in precluding appellant's counsel from conducting direct examination of appellant immediately after the conclusion of FCCS' examination of appellant.
 {¶ 29} The record, however, does not support appellant's contentions. At the conclusion of the examination of appellant, FCCS' counsel announced she had no further questions. When the trial judge indicated the witness could step down, appellant's attorney stated: "Your Honor, would — would — would the bench prefer me to recall her on — in my case-in-chief?" (Nov. 22, 2004 Tr. 47.) When the trial judge replied that he would, counsel for appellant responded, "Thank you, Your Honor, will do." Id. With that, counsel for FCCS called its next witness.
 {¶ 30} Contrary to the suggestion in appellant's assignment of error, counsel never requested the opportunity to directly examine appellant at the conclusion of the cross-examination conducted through FCCS' counsel. Instead, counsel asked the trial court's preference, the trial court indicated its preference, and counsel for appellant acceded to that preference. Because counsel failed to either request the opportunity to directly examine appellant or to object to the trial court's response to counsel's inquiry, appellant has waived any error in the trial judge's manner of handling that aspect of the proceedings. Moreover, given the latitude granted a trial judge in conducting a trial, appellant has fallen short of proving plain error in the trial judge's response.
 {¶ 31} Appellant's second assignment of error is overruled.
 {¶ 32} Having overruled both of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
French and McGrath, JJ., concur.