[Cite as *In re C.G.*, 2012-Ohio-5999.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.G.

C.A. No.     26506

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 10 02 0089

DECISION AND JOURNAL ENTRY

Dated: December 19, 2012

CARR, Presiding Judge.

{¶1}     Appellant, Chad G. ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of his minor child, C.G., to Shawn W.  This Court affirms.

I.

{¶2}     On February 1, 2010, Summit County Children Services Board ("CSB") filed a dependency complaint in juvenile court, regarding C.G., born September 18, 2000, as well as the three other children of Felicia B. ("Mother").  Only the custody of C.G. is at issue in this appeal. The agency became involved because of Mother's continuing problems with substance abuse and the impact of those problems on the children.

{¶3}     All four children were adjudicated dependent on March 11, 2010, and were initially left in Mother's care under the protective supervision of CSB.  Subsequently, on or about October 15, 2010, C.G. and her half-sister M.W., with whom she shared a close bond,

were placed in the temporary custody of Shawn W., the biological father of M.W. and a "father figure" to C.G. for most of her life. The agency retained protective supervision over the girls.

{¶4} C.G.'s father became involved with his daughter for the first time in August 2010. Paternity was established and supervised visits began. In the fall of 2010, those visits were halted, however, when Father was charged with domestic violence against the mother of his infant child and he was subsequently incarcerated. In February 2011, while incarcerated, Father, pro se, filed a written objection to the temporary placement of C.G. with Shawn W. He expressed deep regret for his own actions and pointed to his rehabilitative efforts, which included counseling for stress management, anger management, and alcohol abuse. He asserted that, upon his release, he hoped to find employment and provide a safe environment for his child. Upon his release from jail in April 2011, he returned to his girlfriend's residence in Columbus and later briefly reunited with Mother. He applied to the juvenile court for appointed counsel in July 2011. By November 2011, Father had returned to Akron and resumed visits with C.G.

{¶5} After two six-month extensions, the case was reaching the two-year mark. A dispositional hearing on the custody of the children was scheduled to begin on January 12, 2012. Evidence regarding the placement of the other three children was heard at that time. The two oldest children were placed with relatives, and M.W. was placed in the legal custody of her father, Shawn W. Two weeks later, the matter of C.G.'s custody came on for hearing on competing motions for legal custody: Father moved for legal custody in himself and CSB sought legal custody in Shawn W.

{¶6} On the day set for hearing, however, Father did not appear. His attorney's motion for a continuance was denied, and the court proceeded to hear testimony from Shawn W., the CSB supervisor, and the guardian ad litem. Following the hearing, the magistrate granted legal

custody of C.G. to Shawn W., finding that to be in the best interest of the child. The trial judge overruled Father's objection to the denial of a continuance and adopted the judgment of the magistrate. Father appealed from the judgment of the trial court and assigned one error for review.

II.

**Assignment of Error**

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED FATHER'S REQUEST FOR A CONTINUANCE AS IT VIOLATED [FATHER'S] DUE PROCESS RIGHTS AND HIS RIGHT TO CONFRONT THE STATE'S WITNESSES.

**{¶7}** In his sole assignment of error, Father argues that the trial court deprived him of due process by denying his attorney's request to continue the dispositional hearing. Father has not argued that he was denied notice or the opportunity to be heard, but rather only that the court declined to continue the hearing when he failed to appear.

**{¶8}** In juvenile cases, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Juv.R. 23. In addition, "[a]ll requests for continuances must be made in writing and filed seven days before the scheduled hearing date [except upon] demonstration of emergency or for other unforeseen circumstances." Loc.R. 5.03(B) of the Court of Common Pleas of Summit County, Juvenile Division. The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

**{¶9}** "Whether a denial of a request for a continuance is so arbitrary as to violate due process depends on the circumstances of the case, particularly the reasons articulated to the trial

court in support of the request." *Morrow v. Becker*, 9th Dist. No. 11CA0066-M, 2012-Ohio-3875, ¶ 20, citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The United States Supreme Court has emphasized that "not every denial of a request for more time [ ] violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar*, 376 U.S. at 589.

{¶10} In *Unger*, the Ohio Supreme Court identified certain factors to be considered in determining whether a continuance is appropriate. These factors include: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger*, 67 Ohio St.2d at 67-68.

{¶11} At the hearing, trial counsel's request for a continuance was based primarily on the fact that Father was not present. Father's attorney had expected Father to attend the hearing, and he expressed no knowledge of Father's whereabouts or the reason for his absence. He observed that Father had been in court at the last hearing when the date for this hearing was set, but indicated that he had had no contact with Father since that time. He was unable to reach Father by telephone on the day of the hearing. Trial counsel also complained that the CSB supervisor appeared at the hearing in place of the CSB caseworker.

{¶12} The court heard testimony from the CSB supervisor, the potential legal custodian, Shawn W., and the guardian ad litem. The CSB supervisor explained that the agency had briefly sought placement with Father, but concluded that Father had not demonstrated an ability to

parent C.G. on a long-term basis and to provide for her basic needs. She cited Father's instability in relationships and his criminal record. As to the potential custodian, she explained that Shawn W. had been a father figure to C.G. for most of her life and that he demonstrates a strong will to parent her. She also cited the close bond between C.G. and her half-sibling who resides in the same home. Next, Shawn W. testified to his wish to provide custody for C.G. and his willingness to accept that responsibility. He explained that he had taken care of C.G.'s daily needs as an infant while he was still in a relationship with Mother, later remaining in her life in a "father relationship," and most recently as a temporary custodian. He explained that he treats C.G. the same as he treats his own daughter. He gets C.G. to school, where she plays trumpet in the band, and participates with her and M.W. in 4H. He arranges for day care for them before and after school to accommodate his 7:00-4:00 weekday work hours. Finally, the guardian ad litem testified that he believed it was in C.G.'s best interest to be placed in the legal custody of Shawn W. He explained that Shawn W. has provided a stable, loving, and caring home for the child, even before he was given temporary custody. He also cited the strong bond between C.G. and her half-sibling M.W. The guardian ad litem noted that C.G. would like to continue visiting with Father, but she would prefer to reside with Shawn W.

{¶13} In applying the *Unger* factors to the present case, this Court concludes as follows. First, as to the issue of potential delay if a continuance were granted, Father argues that any such delay would have been minimal because the court had previously scheduled a continuation date for five days later, if needed. The question, however, is not whether the trial court had another date available for the hearing, but rather how long it would be until the absent party would be available to appear. That information was unknown to the trial court. Because Father was not

present and provided no explanation for his absence, the trial court was unable to find that any delay would be minimal.

{¶14} Next, as to the question of whether other continuances had previously been requested and received, there is no record that Father had himself requested any other continuances. Nevertheless, the trial court had granted two six-month extensions and the case had been pending for almost two years. In addition, Father missed several hearings and a great deal of visitation due to his conviction and incarceration for domestic violence. The trial court had an obligation to the child to determine a disposition as expeditiously as possible and that obligation is not outweighed by an unsupported request for a continuance.

{¶15} Because there was no advance notice of Father's absence, Father's failure to appear caused inconvenience to the litigants, witnesses, opposing counsel, guardian ad litem, and court personnel, all of whom were present and ready to proceed with the hearing. In particular, Shawn W. had to secure permission to take time off from his job in order to attend the hearing.

{¶16} Next, this Court considers whether the requested delay is for a legitimate reason and whether Father contributed to the circumstances that gave rise to the request for the continuance. Because Father had notice of the hearing and proffered no reason for his absence either on that day or in subsequently filed pleadings, the only possible conclusion is that there is no legitimate reason for the request and that Father is solely responsible for the circumstances that gave rise to the request for the continuance.

{¶17} As to other relevant factors, it is perhaps possible that Father may have changed his mind about pursuing custody because, since the last hearing, the guardian ad litem recommended that C.G. be placed in the legal custody of Shawn W. and 11-year-old C.G. expressed her wish to the magistrate to be placed with him as well.

{¶18} Although Father's absence from the hearing was his attorney's primary reason for the requested continuance, Father also argues that the absence of the caseworker supports a continuance because a delay would permit him to subpoena her. There is no evidence in the record, however, suggesting that the caseworker would be able to appear at a later date. In fact, the supervisor stated that the caseworker may require surgery and would certainly not be back within five days. In any event, given the duration of many custody cases, it is not unusual for service providers to change during the course of a single proceeding, and written documentation is frequently relied upon in order to accommodate those changes. Finally, the record does not reflect that the testimony of the caseworker would have supported Father's position any more than that of the supervisor.

{¶19} This Court has previously recognized that a parent's right to be present at a custody hearing is not absolute. *In re J.S.*, 9th Dist. No. 10CA009908, 2011-Ohio-985, ¶ 17. In recognizing that courts have a duty to protect due process in such cases, this Court has also emphasized that parents have a corresponding duty to "'exhibit cooperation and [ ] communicate with counsel and with the court in order to have standing to argue that due process was not followed[.]'" *Id.*, quoting *In re Q.G.,* 170 Ohio App.3d 609, 2007-Ohio-1312, ¶ 12 (8th Dist.). In *J.S.*, the parent's failure to communicate a reason for his absence on the day of the hearing resulted in the denial of a continuance. *See also In re Harris*, 10th Dist. Nos. 00AP–987, 00AP-988, 00AP-989, 2001 WL 266995, *2 (Mar. 20, 2001) (finding no abuse of discretion in denying a continuance when request was made on day of trial in violation of local rule and counsel offered no reason for his client's absence).

{¶20} Father cites *In re B.M*, 10th Dist. Nos. 09AP-60, 09AP-61, 09AP-62, 09AP-63, 09AP-64, 2009-Ohio-4846, ¶ 13, for the proposition that "a trial court's failure to take extra care

to ensure the parent's presence constitutes an abuse of discretion." In context, however, the Tenth District restricted this caution to "cases where a parent communicates with the court or counsel to explain a problem attending a hearing[.] *Id.* This limitation recognizes the critical importance of communication by the parent to either counsel or the court in the event of a problem in attending a hearing. Father's failure to explain his absence to his attorney at the time or at the soonest opportunity was significant to the decision of the trial court, and, as well, on review.

{¶21} Given Father's failure to comply with the local rule and the lack of any reason for Father's absence, the trial court did not abuse its discretion by denying the request for a continuance. Father's sole assignment of error is overruled.

### III.

{¶22} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

DICKINSON, J.
BELFANCE, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.