[Cite as *In re J.M.*, 2025-Ohio-2410.]

IN THE COURT OF APPEALS OF OHIO

TENON APPELLATE DISTRICT

In the Matter of:      :

J.M.,      :      No. 24AP-580
(C.P.C. No. 22JU-003499)
:
[D.M.,      (REGULAR CALENDAR)
:
Appellant].
:

———————————————

D E C I S I O N

Rendered on July 8, 2025

———————————————

**On brief:** *John T. Ryerson*, for appellant D.M.

**On brief:** *Robert J. McClaren* and *Jessica M. Ismond*, for appellee Franklin County Children Services.

———————————————

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

BEATTY BLUNT, J.

{¶ 1} Appellant, D.M. ("appellant" or "Mother") appeals the September 10, 2024 decision and judgment entry from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating the parental rights of appellant and granting permanent court commitment of J.M. to Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On April 5, 2022, FCCS filed a complaint in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch under case No. 19JU-008781, alleging that appellant's child, J.M., (DOB 03/19/2022) was an abused, neglected, and dependent minor. The factual allegations set forth in the complaint are not relevant to the issue before us in this case and therefore we need not belabor them, but the crux of the basis for the complaint were allegations of drug use by Mother. An emergency custody

order ("ECO") was issued to FCCS the same day the complaint was filed, with an initial temporary order of custody ("TOC") being issued the following day, April 6, 2022.

{¶ 3}   On July 27, 2022, Mother appeared[1] along with her counsel, and the parties agreed to dismiss the neglect and dependency causes of action and the first cause of action alleging abuse in exchange for Mother being uncontested on the second cause of action alleging abuse. On July 28, 2022, J.M. was adjudicated abused pursuant to R.C. 2151.03(D) and a temporary court commitment ("TCC") was granted to FCCS. A case plan was approved, adopted and made an order by the court that same day.

{¶ 4}   On March 30, 2023, FCCS filed a motion for a first extension of TCC, and the motion was heard at the annual review date on April 3, 2023. Mother and her counsel appeared for the hearing via Zoom and Mother agreed to the first extension of TCC. Further, counsel for Mother requested the court grant him leave to withdraw as counsel on behalf of Mother, and the magistrate granted this request.

{¶ 5}   On July 28, 2023, FCCS filed its motion for permanent court commitment ("PCC"). The court set a hearing date of October 3, 2023 before a magistrate via Zoom. On September 2, 2023, Mother was served with the motion for PCC and notice of the hearing date via process server. We note that at this point in the proceedings Mother was not represented by counsel due to the previous withdrawal of counsel. Nevertheless, at the October 3, 2023 hearing held via Zoom, new counsel for Mother was appointed, and the hearing was continued to November 7, 2023 for that stated reason.[2]

{¶ 6}   On November 7, 2023, the next hearing on FCCS' motion for PCC was held in-person, but the hearing was again continued to November 27, 2023. According to the continuance entry and order, the hearing was continued due to Mother contesting the motion for PCC. Mother's name is not on the continuance entry or order, indicating Mother did not appear.[3] Presumably then, counsel for Mother, who did appear, advised the court

---

[1] The putative father, D.O., was also named as a defendant but did not appear at the July 27, 2022 adjudication hearing, nor for any other hearings in this matter. D.O. has not appealed the trial court's judgment.

[2] Mother's name does not appear on the continuance entry and order; thus, although not entirely clear from the record, it appears that Mother did not participate in the October 3, 2023 hearing.

[3] Notably, at the trial on FCCS' motion for PCC, counsel for Mother advised the court that she had never met Mother in person and had been in contact with her only via email. (May 13, 2024 Tr. at 51.) Thus, we presume that Mother did not attend any of the hearings at which her counsel appeared.

of Mother contesting the motion for PCC, and a hearing was then set in front of the judge assigned to the case.

{¶ 7} At the November 27, 2023 hearing, Mother again did not appear, and the matter was continued again until January 9, 2024 to obtain service on the putative father. Counsel for Mother appeared at the hearing.

{¶ 8} On January 2, 2024, the guardian ad litem ("GAL") filed her final report in which she recommended that FCCS' motion for PCC be granted.

{¶ 9} At the January 9, 2024 hearing, Mother again did not appear, and the case was continued to March 19, 2024. Counsel for Mother appeared at the hearing.

{¶ 10} At the March 19, 2024 hearing, Mother again did not appear, and the case was continued to May 13, 2024. Counsel for Mother appeared at the hearing.

{¶ 11} On May 13, 2024, the matter proceeded to trial on FCCS' motion for PCC. At the hearing, the trial court heard testimony from the FCCS caseworker assigned to J.M., Shawna Bagley, and J.M's GAL, Phyliss Rowan. As noted previously, neither the factual allegations nor the evidence is relevant to the issue raised in this case. The essence of Bagley's testimony was that she had been involved with one of Mother's children and then became involved with the family again when both Mother and J.M. tested positive for meth and cocaine at J.M's birth. She further testified that Mother failed to complete the case plan, including a refusal to undergo treatment for substance abuse; that Bagley was unable to conduct a home visit because Mother would not let Bagley in when she went to Mother's home; that despite making at least three attempts to see Mother each month, Mother failed to respond to written messages and letters left at Mother's home; that FCCS had been granted permanent custody of two of Mother's other children; and that Mother attended the first two supervised visits with J.M. and then never came back. Mother did not visit with J.M. at all in 2023 or 2024 and her last contact with him was in May of 2022. Bagley further testified that J.M. has special needs but Mother never attended any of his medical appointments. Finally, Bagley testified that J.M. is placed in the same foster home he was placed in at his birth, the foster family has already adopted one of J.M.'s siblings, and the foster family is bonded to J.M. Bagley recommended that the court grant permanent custody of J.M. to FCCS for purposes of adoption.

{¶ 12} Phyliss Rowan, J.M.'s GAL, testified that J.M. is Mother's eighth child. Rowan has been the GAL for all Mother's children and has a long history with the children and their respective foster families. Rowan testified that J.M. is extremely bonded to his foster family and he does not know anyone else as his family other than his foster family. Rowan further testified that she made multiple attempts to contact Mother by calling and emailing prior to the hearing. Mother responded to Rowan once, on January 19, 2024, but never again after that. J.M. has no idea who Mother is to him. Rowan recommended that the court grant permanent custody of J.M. to FCCS.

{¶ 13} After the testimony of Bagley and Rowan concluded, counsel for Mother stated on the record her contacts with Mother. Counsel for Mother was appointed in October 2023. Counsel was provided with a phone number and an address, and counsel called the number in October, November, and December 2023 multiple times to attempt to reach Mother. Counsel also sent letters to Mother. She also stopped by the home on November 29, 2023 "and hand delivered a letter with our next court date, my phone number, who I was, my email." (May 13, 2024 Tr. at 49.) Counsel did not get a response from Mother. Counsel for Mother continued:

> I also mailed a letter to mom on December 20 of 2023, mailed another letter January 10, 2024, and -- and that was for this date coming up. Mom reached out to me, so I -- I do think she has received my letters at that address. Mom sent me an email on April 3rd, 2024, stating she had received my letter regarding this date [the date of the hearing on the PCC motion], and she had the correct date and time. She confirmed the address . . . as being her address and she stated that she would like to schedule a meeting with me.

(Tr. at 49.) Counsel for Mother further stated that in an email from Mother to counsel dated April 11, 2024,[4] Mother told her that she wanted to start doing her drug screens and doing visits. Counsel stated "[w]e scheduled a meeting for April 24th, April 30th and May 1st of 2024. Mom did not show for those appointments." (Tr. at 50.) Counsel for Mother stated that all her communications with Mother have been by email.

---

[4] The court observes this email was sent a little more than four weeks prior to the May 13, 2024 hearing on FCCS' PCC motion, six months after counsel first began attempting to contact Mother, and almost two years after her last documented contact with J.M.

{¶ 14} On September 10, 2024, the trial court issued a decision and judgment entry sustaining FCCS' motion for permanent custody and divesting the parents of their parental rights. (Sept. 10, 2024 Jgmt. Entry.)

{¶ 15} This timely appeal followed.

## II.  Assignment of Error

{¶ 16} Mother asserts the following sole assignment of error for our review:

> The Court below committed reversible and plain error in proceeding on a permanent custody motion, and granting that motion, on a trial date that appellant Mother had no actual knowledge of, because she had not been notified according to rule and law.

## III.  Discussion

{¶ 17} It is well-settled that "[p]arents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 2014-Ohio-228, ¶ 10 (10th Dist.), citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio has recognized the essential and basic right of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *In re C.F.*, 2007-Ohio-1104, ¶ 28. "Parental rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child." *In re E.B.*, 2017-Ohio-2672, ¶ 19 (10th Dist.), citing *In re K.M.*, 2015-Ohio-4682, ¶ 15 (10th Dist.); *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). In certain circumstances, therefore, the state may terminate the parental rights of natural parents when such termination is in the best interests of the child. *H.D.* at ¶ 10, citing *In re E.G.*, 2007-Ohio-3658, ¶ 8 (10th Dist.), citing *In re Harmon*, 2000 Ohio App. LEXIS 4550 (4th Dist. Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994).

{¶ 18} The permanent termination of parental rights has been described as " 'the family law equivalent of the death penalty in a criminal case.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 19, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991). *See also In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶ 14. Accordingly, a parent "must be given every procedural and substantive protection the law allows prior to parental rights being [permanently] terminated." (Citation omitted.) *In re J.Z.*, 2005-Ohio-3285, ¶ 9 (10th Dist.). *See also Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982) ("When the State

moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."). In cases involving the permanent termination of parental rights, due process requires " 'a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing.' " *In re M.W.*, 2007-Ohio-6506, ¶ 79 (10th Dist.), quoting *J.Z.* at ¶ 9, citing *In re Thompson*, 2001 Ohio App. LEXIS 1890 (10th Dist. Apr. 26, 2001).

{¶ 19} Nevertheless, a parent's right to be present at a hearing on permanent custody is not absolute. *In re M.W.*, 2016-Ohio-2948, ¶ 11 (8th Dist.), citing *In re C.G.*, 2012-Ohio-5999, ¶ 19 (9th Dist.). While courts must ensure that due process is provided in parental-termination proceedings, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 2007-Ohio-1312, ¶ 12 (8th Dist.).

{¶ 20} In this case, Mother does not challenge the merits of the juvenile court's September 10, 2024 decision awarding permanent custody of J.M. to FCCS. Instead, she contends the procedure through which that decision was reached was fundamentally unfair and constituted plain error. Specifically, on appeal Mother argues that the trial court plainly erred in proceeding with the May 13, 2024 trial on FCCS' motion for permanent custody because (1) Mother was not present, and (2) Mother was not properly notified of the trial date. For the reasons explained below, we find no error on the part of the trial court.

{¶ 21} First, we begin by observing that, as implicitly conceded by Mother in her assignment of error, counsel for Mother did not object to the hearing going forward on the basis of improper notice; therefore, Mother has waived all but plain error on this issue. *See, e.g.*, *In re J.C.S.*, 2023-Ohio-1511, ¶ 58 (2d Dist.) (issue of notice waived on appeal when the parent's attorney is present for various permanent custody hearings and does not raise the improper notice issue); *In re I.G.*, 2014-Ohio-1136 (3d Dist.) (same); *In re T.B.*, 2022-Ohio-4734 (4th Dist.) (same); *In re Keith Lee P.*, 2004-Ohio-1976, ¶ 8 (6th Dist.) (same); *In re X.Q.*, 2019-Ohio-1782, ¶ 18 (8th Dist.) (same). An appellate court may recognize an error that an appellant waived only if it constitutes plain error. *In re T.C.K.*, 2013-Ohio-3583, ¶ 16 (4th Dist.). The Supreme Court has directed lower courts to limit applying the

plain error doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 1997-Ohio-401.

{¶ 22} Second, the record readily shows that Mother was sent notice of the May 13, 2024 hearing on the PCC motion, to wit: on March 20, 2024, an original copy of the hearing notice for May 13, 2024, at 10:00 a.m., was filed on the docket and mailed to Mother at her last known physical address. The docket does not show any return of service indicating that the mailed notice was returned as undeliverable.[5] Furthermore, as noted previously, counsel for Mother stated on the record at the hearing that "Mom sent me an email on April 3, 2024, stating she had received my letter regarding this date [the date of the hearing on the PCC motion], and she had the correct date and time. She confirmed the address . . . as being her address[.]" (May 13, 2024 Tr. at 49.) Thus, appellant's assertion in her brief that "the Court, the Clerk's office and the parties all had Mother's correct address from the beginning to the end of the case, but no efforts were made to notify her of the Trial hearing date" is patently meritless. (*See* Appellant's Brief at 14.)

{¶ 23} Despite the foregoing, appellant now insists on appeal that she was not properly served with notice of the hearing on the PCC motion. Specifically, she asserts that pursuant to Civ.R. 5 and Juv.R. 20, she was required to be served with the actual court notice of the hearing date, that she was not so served, and that an email from her counsel advising her of the hearing date is insufficient to put her on actual notice of the hearing date. We reject these arguments in their entirety. Firstly, we reiterate, contrary to Mother's assertion that "[i]t is clear from the record that Mother D.M. never received any such written notices from the Court," (*see* Appellant's Brief at 15) the court's docket indicates exactly the opposite.

{¶ 24} Moreover, in this case Mother was represented by counsel. Pursuant to both Civ.R. 5 and Juv.R. 20, when a party is represented by an attorney, service of pleadings and notices is to be made on the attorney. Civ.R. 5(B)(1); Juv.R. 20(B). The court's docket shows that counsel for Mother was properly served with the notice of the hearing on the

---

[5] The docket does indicate that hearing notices sent to three parties were returned undeliverable: John Doe, the minor child J.M., and R.M. (J.M.'s biological grandmother). None of these parties has appealed the trial court's judgment.

PCC motion.[6]  Further, at the May 13, 2024 trial, counsel for Mother never stated that she had not received the notice of the May 13, 2024 hearing date as evinced by the docket. Therefore, under Civ.R. 5 and Juv.R. 20, counsel for Mother was properly served with notice and, by extension, so was Mother.

{¶ 25}  In the face of the foregoing realities, Mother cites a recent case of this court purportedly in support of her proposition that she was not properly served with notice of the hearing on the PCC motion.  In *In re B.H.*, 2023-Ohio-3491, we reversed the trial court's judgment granting a PCC motion where the appellant was not present for the final hearing and the record was not clear that the appellant was properly served with notice of the final hearing at her place of residence.  *In re B.H.* at ¶ 41.  However, in that case, appellant *was not represented by counsel*.  In this case, Mother *was* represented by counsel.  Indeed, the transcript readily shows that not only did counsel for Mother appear at the May 13, 2024 hearing, she conducted competent cross-examinations of both witnesses called by FCCS and ably represented Mother's interests.  Thus, we find *In re B.H.* completely inapposite to the instant matter.  Mother has cited no other authority supporting her position and we have likewise found none.

{¶ 26}  In sum, the trial court did not err, plainly or otherwise, in proceeding with the May 13, 2024 trial on FCCS' motion for permanent custody because she was properly notified of the trial date and, despite Mother's absence, she was represented by counsel at the trial.

## IV. Disposstion

{¶ 27}  Accordingly, based on all the foregoing, we overrule the sole assignment of error presented by appellant D.M., and we affirm the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch granting permanent custody of J.M. to FCCS.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

_____

---

[6] Indeed, counsel signed the March 20, 2024 continuance order setting the May 13, 2024 court date.