[Cite as *In re O.M.S-W*, 2020-Ohio-201.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 19AP-269 |
| O.M.S-W., | : | (C.P.C. No. 17JU-7564) |
| (R.S-W., | : | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on January 23, 2020

**On brief:** *Robert J. McClaren* and *Sharon K. Carney,* for appellee Franklin County Children Services.

**On brief:** *Yeura Venters,* Public Defender, and *Ian J. Jones,* for appellant R.S-W.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

NELSON, J.

{¶ 1} The state does not claim many powers greater than the authority under defined circumstances to end a mother's or father's parental rights. When the state seeks to exercise that power, "parents 'must be afforded every procedural and substantive protection the law allows.' " *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), *superseded by statute*, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). "In Ohio, those protections include the right to assistance of counsel and the right to appointed counsel if a parent is indigent. *See* R.C. 2151.352; Juv.R. 4(A)." *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, ¶ 12 (French and Kennedy, JJ., concurring); *see also id.* at ¶ 1 (O'Neill, J., and O'Connor, C.J., lead opinion) ("One of those protective measures is the right to be represented by an attorney 'at all stages of the proceedings.' R.C. 2151.352").

{¶ 2} Thus, the Supreme Court of Ohio has held in very plain terms that:

When the state seeks to terminate a parent's parental rights, the parent has the right to counsel. The parent cannot be

> deprived of that right unless the court finds that the parent has knowingly waived the right to counsel. Waiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing.

*In re R.K.*, syllabus of the Court.

{¶ 3} That fundamental proposition, duly grounded in statute, governs this case. It requires real "consideration" and "discussion" by a trial court of any supposed parental waiver of the right to counsel in such a situation. *Id.* at ¶ 7 (lead opinion: trial court erroneously "simply granted the attorney's oral motion to immediately withdraw, apparently without giving any consideration to whether [mother] had waived her right to counsel"), ¶ 16 (French, J., concurring, joined by Kennedy, J.: "the trial court should engage in an on-the-record discussion of the [outlined] factors indicating that a parent has waived the right to counsel"). The aim of that careful examination must be to determine whether the right to counsel has been waived "voluntarily, knowingly, and intelligently," *id.* at ¶ 13 (French and Kennedy, JJ.), that is, whether there has been an " 'intentional relinquishment or abandonment of a known right,' " *id.* at ¶ 5 (lead opinion, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 20); *see also, e.g., In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 36 ("when reviewing a waiver of the right to counsel in the context of a permanent termination of parental rights, courts in Ohio have examined whether the waiver was knowingly, intelligently, and voluntarily made") (citations omitted).

{¶ 4} In this case, the trial judge's own analysis of the waiver question and its judgment entry terminating the mother's parental rights reads in full pertinent part:

> The magistrate has filed a decision in this matter with the Clerk of Courts on <u>see time stamp</u>, and copies thereof were mailed to the parties and/or their attorneys of record. The Court adopts the magistrate's decision and approves same, unless specifically modified or vacated, and enters the same as a matter of record, and includes same as the Court's Judgment herein.

April 1, 2019 Judgment Entry. With those sentences, the trial court ratified the withdrawal of mother R.S-W.'s counsel that had occurred at the outset of the permanent custody hearing and committed permanent custody of her then two-year-old daughter O.M.S-W. to Franklin County Children Services for purposes of adoption.

{¶ 5} The "Magistrate's Decision" as incorporated by the trial court's judgment does not explicitly address or assess issues of waiver. It recites in its entirety with regard to the question of counsel's withdrawal that:

> The mother's attorney, James Chapman, indicated that the mother is not present for the hearing. Additionally, James Chapman requested the Court grant him leave to withdraw as counsel on behalf of the mother, [R.S-W.]. The magistrate granted the request for leave to withdraw as counsel on behalf of the mother, [R.S-W.].
>
> The Magistrate proceeded to hear sworn and informal testimony * * * *
>
> Recommend Attorney Chapman be granted leave to withdraw as counsel on behalf of the mother * * *.

April 1, 2019 Magistrate's Decision at 1, 2 (capitalizations adjusted).

{¶ 6} The transcript of those proceedings before the magistrate is marginally less cursory with regard to the examination of counsel and the decision to conduct the permanent commitment hearing without legal representation for the mother. After calling the case and ascertaining that the mother was not present, the magistrate posed one question to (replacement) counsel Chapman: "And are you comfortable going forward without her today?" The lawyer responded:

> I -- I would like to ask to withdraw. I have had absolutely no contact with her. I've sent her -- sent her three letters, two of them were returned, one of them wasn't. I've tried to call her a few times; the phone -- I either get a busy signal or the phone just rings and rings and rings. From my understanding the caseworker gave her my number when -- when she saw her and I have never heard from her.

March 25, 2019 Transcript of Proceedings at 3-4.

{¶ 7} The magistrate immediately inquired of the lawyer for the government agency, Franklin County Children Services, whether she objected to the mother's lawyer withdrawing. She did not. *Id.* at 4.

{¶ 8} The magistrate then said:

> All right. I will go ahead and find that you've done what you can to represent your client and she's basically abandoned her

> right to an attorney since she's not made contact with you and
> I will go ahead and allow you to withdraw.

*Id.*

{¶ 9} The magistrate excused the lawyer. And that was that, but for the direct examination of the Franklin County Children Services Caseworker and the Guardian Ad Litem, followed by the magistrate's conclusion that she would grant the permanent court commitment of the girl. Interestingly, the caseworker's testimony did reflect that pursuant to plan, the mother had participated in mental health counseling services until breaking off after "[t]hrough no fault of her own, she did lose several counselors," and that she had completed the first part of a parenting program, but not the second with contemplated in-home visits because she "lost her housing." *Id.* at 8-9. R.S-W. also had participated in office bonding visits with her daughter, which then were advanced to supervised visits in the community. *Id.* at 9-10.

{¶ 10} "The visits go rather -- they go rather well," the caseworker disclosed. "She -- she is attentive, but at times she will zone out and the social service aide will have to keep an eye on [O.M.S-W.], [be]cause it seems like Mom is -- her mind might be elsewhere." *Id.* at 10. "She attended more [visits with her daughter] than she missed," but following the deaths of two friends missed several during a six-week stretch. *Id.* The daughter "seems comfortable around her mother; she's not afraid of her." *Id.* at 11. Too, O.M.S-W. is "very happy" in her foster home, which is a prospective home for adoption. *Id.* at 11-12. The Guardian Ad Litem had not seen the girl since she was placed in the foster home, but had spoken with the foster parents on the telephone. *Id.* at 14. He had interacted with mother R.S-W. only in connection with a previous case involving other children that "did go to a contested trial" before R.S-W. "indicated to [that] court that she no longer wished to participate." *Id.* at 14-15. He had seen her at the courthouse for an earlier hearing regarding O.M.S-W. and adjudged that "[h]er mental health and * * * stability did not appear to be doing well, at that time." *Id.*

{¶ 11} The magistrate adopted the recommendations of the county caseworker and the Guardian Ad Litem, determining to "grant the permanent court commitment for purposes of adoption." *Id.* at 17. The trial court's judgment entry followed. April 1, 2019 Judgment Entry.

{¶ 12} Mother R.S-W. advances one assignment of error on appeal:

The trial court erred by allowing court-appointed counsel to withdraw, denying appellant her right to counsel without evidence or a finding that appellant had knowingly waived her right to counsel.

Appellant's Brief at i.  We agree, and provide some additional observations related to that very significant procedural concern (while not in any way intending to express any view as to the appropriate ultimate disposition of the commitment question).

{¶ 13} The record reflects that R.S-W.'s original lawyer in this case was permitted to withdraw on July 6, 2018 due to a "Client Complaint."  That request came roughly three weeks after R.S-W. herself had filed a motion seeking the magistrate's disqualification:  the magistrate had "totally ignored" her progress in completing her case plan, R.S-W. wrote, and "[i]s making me wait 6 months for my child to be returned" while not ordering immediate home visits.  June 15, 2018 Motion for Magistrate Disqualification.

{¶ 14} That pro se motion came in the aftermath of a May 31, 2018 annual review hearing that R.S-W. attended.  Her lawyer at the time advised the court that "mother would like to have the child in her home," and urged that "home visits start right away" if the girl was not to be moved there immediately.  May 31, 2018 Transcript at 3 (also noting "certificate * * * of achievement from the Guidestone worker who was with her out in the community," and reporting compliance with the case plan).  The lawyer reiterated at that hearing:  "She's completed the case plan and she would like to have the child back in her home." *Id.* at 4 (saying also, "[i]t's been six months since she's completed her case plan * * * in part one").  The GAL pointed to "a long history with siblings here," referencing "six other children that were PCC'd," and noted that "she does need to complete part two of the case plan" with regard to O.M.S-W.  *Id.* at 5 (then raising further mental health concerns, *id.* at 5-6).  The matter was set down for a further review hearing in six months, *id.* at 9; in a follow-up entry, the magistrate extended temporary court custody for that six months, as "there has been significant progress on the case plan and there is reasonable cause to believe the child will be reunited with a parent or otherwise permanently placed within the period of extension."  June 12, 2018 Magistrate's Decision from May 31, 2018 hearing at 1, as adopted (also noting that separation of O.M.S-W. "from home continues to be necessary

because the circumstances giving rise to the original filing have not been sufficiently alleviated").

{¶ 15} After the first lawyer's subsequent withdrawal, the court appointed Mr. Chapman counsel for R.S-W. by entry filed October 26, 2018. That order (also noting a court date of November 27, 2018) designated the "client address" as "1760 E. Livingston Ave. Apt. C Columbus Ohio 43208." And it came on the heels of the County's Motion for Permanent Custody filed October 17, 2018. But it does not seem then to have been served on or delivered to R.S-W.: a process server attempting to deliver the permanent custody motion, notice of hearing, and summons reported his unsuccessful attempt to serve her at that same address on October 28, 2018. He discovered that she had been "evicted 1 month ago." November 19, 2018 Personal Service Return.

{¶ 16} Similarly, mail service as directed by the court system for what by then was designated a permanent custody hearing and set for January 10, 2019 and February 12, 2019 (before being reset for March 25, 2019) apparently failed repeatedly for an address at 325 E. Long Street. S*ee* filings of January 2, 2019 (sent December 18) ("no such number"); January 9, 2019 (certified mail); January 23, 2019 ("not deliverable; unable to forward"). Further attempts for service at the 1760 E. Livingston address also were unavailing. *See* filings of February 22, 2019 (mailed February 14); March 25, 2019 (mailed January 11).

{¶ 17} Service on R.S-W. of "2 motions" containing the permanent custody motion and a notice of the March 25, 2019 hearing, *see* February 12, 2019 "Motion for Continuance" with "Magistrate's Order" below (stamped "This is a Permanent Custody Hearing. If the Court grants Permanent Custody, ALL your parental rights and privileges are terminated, and you will have no legal rights to the child/ren"), eventually was achieved by personal service on the afternoon of March 8, 2019, when the process server found R.S-W. at her scheduled appointment at "FCCS VISITATIONS." March 11, 2019 Personal Service Return. As the County's directions to the process server had suggested, R.S-W. was located at the regularly scheduled visit with her daughter.

{¶ 18} We review the trial court's treatment of lawyer Chapman's motion to withdraw against that backdrop. Here, unlike the circumstances in *In re R.K.* that the Supreme Court deemed *insufficient* to support a theory of waiver of the right to counsel, the record very strongly suggests that lawyer Chapman never reached his client to advise

her that she needed to appear at the permanent custody hearing or that "if she failed to appear the trial court would likely go forward without her and that he would request to withdraw." *In re R.K.*, 2018-Ohio-23 at ¶ 25 (O'Donnell, J., dissenting and noting mother's receipt of that communication).

**{¶ 19}** Mr. Chapman never spoke with R.S-W. after the court appointed him in its entry of October 26, 2018. March 25, 2019 Transcript at 3-4. The address he had been given for her by that entry was no good: when the process server went there on October 28, 2018, he found that R.S-W. had been "[e]victed 1 month ago." November 19, 2018 Personal Service Return. Mr. Chapman acknowledged that two of the three letters he sent her were not received, March 25, 2018 Transcript at 3, and we find nothing in the record to suggest that the third one (or was the letter that was not returned to him the first one or the second one he sent?) reached R.S-W. either. Given the court's lack of success at mail service, it seems extremely unlikely that the letter would have gone to an address at which R.S-W. lived.

**{¶ 20}** Yet the magistrate did not ask Mr. Chapman:

- Where he sent that letter.
- Or when.
- Or whether it specified a hearing date.
- Or if so, what date it mentioned.
- Or whether Mr. Chapman had told his client anything about a potential request to withdraw, or about other potential consequences for a failure to appear.
- Or whether the letter was simply a letter of introduction, letting R.S-W. know that her earlier lawyer had withdrawn.
- Or anything else about what its contents might have been.

**{¶ 21}** Nor did the magistrate ask Mr. Chapman how he had derived his understanding about the caseworker, or what telephone number he had "tried to call * * * a few times," or whether it was associated with the E. Livingston address from which R.S-W. had been evicted. Nor did the magistrate inquire whether Mr. Chapman had made any effort to reach his client at her regularly scheduled visit with her daughter (as the process server ultimately had on March 8, 2019). Nor did Mr. Chapman hint that he had attempted such a meeting, even after the process server had reached her there.

{¶ 22} The County's arguments serve to underscore the lack of any informed waiver of the critical right to counsel. R.S-W. "never once communicated her position on the agency's permanent custody motion to her attorney, despite having five (5) months to do so," the County asserts, and she had been given verbal notice at the May 31, 2018 hearing "of the November 27, 2018 annual review hearing for which the agency filed a Motion for Permanent Custody." Appellee's Brief at 18, 12. But the record is clear that R.S-W. was not served with that motion until March of 2019, and we find nothing to suggest that the court or Mr. Chapman successfully notified her of his representation at any time before that. And nothing in the record reflects that she was advised or knew that the November hearing was converted to a hearing on permanent custody—quite the contrary, which may explain why the continuance entries reflect the matter being set over "To Obtain Additional Information" and "To Perfect Service."

{¶ 23} Under these circumstances and without more information, the trial court would have erred in concluding that R.S-W. knowingly, voluntarily, and intelligently waived her right to counsel. But the magistrate didn't purport even to make that finding, concluding only that R.S-W. had "basically" abandoned her right to counsel "since she's not made contact with [Mr. Chapman]." March 25, 2019 Transcript at 4. "Basically," at least in its colloquial sense of "in effect" or "just about" or "all but," is not good enough where a parent is to be accorded " 'every procedural and substantive protection the law allows,' " *In re Hayes*, 79 Ohio St.3d at 48, and the magistrate did not purport to examine factors or circumstances weighing on the knowing or intelligent nature of the claimed waiver. *Compare In re K.R.*, 9th Dist. No. 17AP0037, 2018-Ohio-1316, ¶ 10 ("the juvenile court was * * * required to make a finding that Mother knowingly waived her right to counsel before allowing appointed counsel to withdraw and proceeding to a permanent custody hearing without representation. The lower court failed to make such a finding").

{¶ 24} Indeed, the magistrate based her ruling that R.S-W. had "basically" abandoned her right to counsel entirely on the observation that R.S-W. had "not made contact with" Mr. Chapman—but because the record does not reflect that R.S-W. had been advised that Mr. Chapman was her new counsel at least until the March 8, 2019 personal service at the visitation with her daughter, that amounts to a finding that she waived her right by failing to appear at the March 25, 2019 hearing. And the Supreme Court has held

that "[w]aiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing." *In re R.K.*, 2018-Ohio-23, syllabus of the Court.

{¶ 25} Of the Justices who combined in endorsing that syllabus, two—Justice O'Neill and Chief Justice O'Connor—also pointed to a two-pronged inquiry that the trial court must make so as to protect a parent's rights before allowing her or his lawyer to withdraw: "first, whether counsel's attempts to communicate with, and get the cooperation of, the client were reasonable and second, whether the client's failure to communicate left counsel unable to ascertain the client's wishes." *Id.* at ¶ 14 (French, J., concurring, summarizing lead opinion). Justices French and Kennedy stated that "[t]hose two inquires do not, however, fully address whether a parent has waived his or her right to counsel." *Id.* Justices French and Kennedy favored adopting, with "modification," this court's pre-*R.K.* recitations that " 'where a parent "fails to maintain contact with counsel," fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw,' " understanding, too, that "a court must take into account the totality of the circumstances, including the parent's background, experience, and conduct,"—and, they "would add, * * * the trial court should engage in an on-the-record discussion of the factors indicating that a parent has waived the right to counsel. A finding, based on the totality of the circumstances, that the parent waived the right to counsel is a necessary predicate for continuing with a permanent-custody hearing after allowing the parent's counsel to withdraw." *Id.* at ¶ 16, quoting *In re Garcia*, 10th Dist. No. 03AP-877, 2004 Ohio App. Lexis 1069 (further internal quotation omitted).

{¶ 26} Here, counsel could have realized from the record available to him both that he had been given a bad address for his client and that she apparently was reachable at her scheduled visitations with her daughter. Not having spoken with her, or having communicated to her the change in the nature of the hearing or the possible consequences for non-appearance, he could have sought a continuance. He did not. Nor did he directly say, nor did the court directly ask him, whether from the record of the case to date— including the strong statements at the May 2018 hearing that R.S-W. "would like to have the child back into her home," May 31, 2018 Transcript at 4, and R.S-W.'s subsequent pro se filing expressing her desire that her child "be returned" or that home visits be started

immediately, June 15, 2018 Motion—he was in a position to know and represent his client's wishes at the hearing. *Compare In re R.K.*, 2018-Ohio-23 at ¶ 6 (lead opinion suggesting that trial court must inquire as to whether lack of communication prevented counsel from ascertaining client wishes), ¶ 18 (French, J., concurring: lawyer "did not say whether he knew [client's] wishes with respect to the motion for permanent custody, and he made no assertion as to whether he could competently represent her in her absence"); *see also id.* at ¶ 8 (lead opinion: "the better option would have been to deny the attorney's motion to withdraw and have him represent [her] interests * * * to the best of his ability"); *In re B.M.*, 10th Dist. No. 09AP-60, 2009-Ohio-4846, ¶ 45 (French, J., dissenting in case that upheld denial where lawyer had warned mother that her failure to appear could result in his withdrawal, and urging that if parent fails to communicate with counsel, "the court must then consider whether the parent's inaction has rendered counsel unable to ascertain the parent's wishes, to proceed without the parent as a witness or to otherwise represent the parent effectively").

{¶ 27} The trial court here did not ensure the protections that Ohio law and the relatively new precedent of *In re R.K.* require. *Compare, e.g.,* Appellee's Brief at 10 (acknowledging that "[t]he guidance for determining whether court-appointed counsel should be given leave to withdraw in a permanent custody case is found in *In re R.K.*"); *In re M Children*, 1st Dist. No. C-180564, 2019-Ohio-484, ¶ 3 ("Because, under the unique facts of this case, the trial court failed to conduct a sufficient inquiry to determine whether mother had the necessary competence to waive her right to counsel, and failed to determine whether mother had in fact knowingly, voluntarily, and intelligently elected to waive that right, we reverse its judgment"). Finding that the trial court erred in relieving R.S-W. of her lawyer before proceeding with the hearing on permanent custody and without having made further inquiry, we sustain R.S-W.'s assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, and remand the case to the trial court for further proceedings consistent with this decision.

*Judgment reversed; case remanded.*

KLATT and BEATTY BLUNT, JJ., concur.

_____