[Cite as *In re B.H.*, 2023-Ohio-3491.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| B.H., | : | No. 22AP-670 |
| | | (C.P.C. No. 22JU-0421) |
| | : | |
| (D.L., Mother, | : | (REGULAR CALENDAR) |
| Appellant). | : | |
| | : | |

D E C I S I O N

Rendered on September 28, 2023

**On brief**: *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant.

**On brief**: *Robert J. McClaren*, for Franklin County Children Services.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

EDELSTEIN, J.

{¶ 1} Appellant, D.L., mother of B.H., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, terminating her parental rights and placing B.H. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} B.H. was born in July 2021. This matter commenced a few weeks later when, on July 30, 2021, FCCS filed a complaint in Franklin C.P. No. 21JU-7393 alleging that B.H. was an abused, neglected, and dependent minor. We need not belabor the nature of the factual allegations set forth in the complaint, as they are not relevant to the issue before us in this case. Suffice it to say the complaint raised concerns about Mother's ongoing

substance use issues, and the juvenile court issued an emergency care order later that same day.

{¶ 3}   On August 2, 2021, Mother appeared with court-appointed counsel at the preliminary hearing on the complaint. (*See* Aug. 2, 2021 Hearing Tr. at 1, 3.) Later that same day, the presiding magistrate issued a temporary order of custody ("TOC") to FCCS. (Aug. 2, 2021 Mag.'s Order.)

{¶ 4}   Due to its failure to adjudicate and dispose of the complaint filed in case No. 21JU-7393 within 90 days—as mandated by R.C. 2151.35(B)(1)—FCCS filed its first refiled complaint on October 20, 2021 in Franklin C.P. No. 21JU-10305. The parties appeared for a virtual hearing on that complaint the next day. (*See* Oct. 21, 2021 Tr. at 1-3.) At that hearing, Mother's appointed counsel told the presiding magistrate that Mother, who was present, "would be uncontested to a dependency but not an abuse."[1] (Oct. 21, 2021 Tr. at 3.) Thus, the initial complaint in case No. 21JU-7393 was dismissed due to the 90-day rule and Mother's appointed counsel accepted service of the first refiled complaint on Mother's behalf. (Oct. 21, 2021 Tr. at 3-7; Oct. 25, 2021 Mag.'s Decision and Entry.) The magistrate proceeded on the first refiled complaint under case No. 21JU-10305, issued another TOC to FCCS for B.H., and set a virtual hearing on the first refiled complaint for November 16, 2021. (*See* Oct. 21, 2021 Tr. at 7-9; Oct. 21, 2021 Mag.'s Order.)

{¶ 5}   Although Mother's appointed counsel was present for the November 2021 hearing, Mother did not appear. (Nov. 16, 2021 Tr. at 2.) The record before us is unclear and inconclusive as to the precise reason for Mother's absence. The Guardian Ad Litem ("GAL") told the presiding magistrate that Mother had an outstanding warrant (Nov. 16, 2021 Tr. at 3), but evidence in the record also suggests Mother may have been in residential treatment at that time (*see* Jan. 7, 2022 Tr. at 5-11). In any event, the prosecutor informed the magistrate that the parents contested the first refiled complaint allegations, so the matter was set for a contested trial in January 2022. (Nov. 16, 2021 Tr. at 2-4.)

{¶ 6}   Counsel for all parties virtually appeared for the contested trial on January 7, 2022, but neither Mother nor Father was present. (Jan. 7, 2022 Tr. at 1-2.) The FCCS representative reported that Mother was in residential treatment but was unavailable to

---

[1] We note that although neglect was also alleged in the complaints, Mother's counsel did not indicate whether Mother contested that allegation at the October 2021 hearing.

appear in court that day because of a COVID-19 outbreak in her unit at the treatment facility. (*See* Jan. 7, 2022 Tr. at 6-8.) Mother's attorney acknowledged he was aware of Mother's treatment but also stated he had not heard from Mother since November 9, 2021, when Mother indicated in an email she would not go uncontested to the first refiled complaint. (*See* Jan. 7, 2022 Tr. at 6-11.)

**{¶ 7}** Despite receiving information explaining Mother's absence and being told by Mother's counsel that Mother still contested the allegations set forth in the first refiled complaint, the presiding magistrate announced she would proceed with adjudication anyway. (*See* Jan. 7, 2022 Tr. at 12.) When asked if their respective clients were uncontested as to the allegations set forth in the first refiled complaint, counsel for both Mother and Father answered in the negative. (Jan. 7, 2022 Tr. at 12-13.) Mother's appointed counsel stated he did not "feel comfortable in going uncontested for [Mother]" and indicated he would request to withdraw if the magistrate intended to proceed as uncontested that day. (Jan. 7, 2022 Tr. at 13.) The magistrate initially said she would permit Mother's counsel to withdraw, but changed her mind after the prosecutor expressed service-related concerns about proceeding without both Mother and Mother's counsel that day. (Jan. 7, 2022 Tr. at 13-14.)

**{¶ 8}** Notwithstanding these concerns, the magistrate proceeded as uncontested on the first refiled complaint in case No. 21JU-10305 and adjudicated B.H. to be an abused, neglected, and dependent child at the January 7th hearing without first permitting Mother's counsel to withdraw from the case. (*See* Jan. 7, 2022 Tr. at 14-15.) The magistrate told Mother's counsel he could file a motion to withdraw after the hearing, but denied his request to withdraw as Mother's counsel prior to the adjudication and disposition of the first refiled complaint at the January 7th hearing. (Jan. 7, 2022 Tr. at 15.)

**{¶ 9}** The magistrate then proceeded to disposition even though the prosecutor and Mother's counsel indicated they were not prepared to proceed and deferred. (*See* Jan. 7, 2022 Tr. at 15-16.) FCCS and the GAL both requested temporary court commitment ("TCC") of B.H. be given to FCCS. (Jan. 7, 2022 Tr. at 15-16.) The magistrate terminated the TOC and granted that request. (Jan. 7, 2022 Tr. at 16.) After the magistrate announced her disposition of the case, the prosecutor questioned whether the magistrate had the "ability to find the juvenile to be abused, neglected, [and] dependent without the contested

hearing if [the] parties are still contested." (Jan. 7, 2022 Tr. at 17.) The magistrate suggested the prosecutor "object and see if * * * [the juvenile court judge] * * * agrees with me or disagrees with me." (Jan. 7, 2022 Tr. at 17.) The prosecutor indicated he was amenable to that suggestion. (*See* Jan. 7, 2022 Tr. at 17-18.)

{¶ 10} Notwithstanding the January 7th adjudication and disposition of the first refiled complaint, FCCS filed a second refiled complaint under Franklin C.P. No. 22JU-0421 on January 13, 2022, citing the failure to adjudicate and dispose of the first refiled complaint within 90 days. Counsel for the parties appeared at a hearing before the magistrate on January 14, 2022,[2] but neither Mother nor Father was present. (Jan. 14, 2022 Tr. at 2-3.) At the state's request, the magistrate orally vacated her January 7th findings in case No. 21JU-10305 and dismissed that case. (*See* Jan. 14, 2022 Tr. at 2-4.) But, of note, the juvenile court did not enter a judgment adopting those decisions until March 3, 2022. We surmise this delay can be attributed to the juvenile court's erroneous adoption of the magistrate's January 7th findings in a judgment entry filed in case No. 21JU-10305 on February 15, 2022—i.e., ***after*** the January 14th hearing wherein the magistrate orally vacated its January 7th findings and dismissed case No. 21JU-10305.

{¶ 11} With respect to newly filed case No. 22JU-0421, counsel for both parents stated at the January 14th hearing that they could not accept service of the second refiled complaint for their respective clients. (Jan. 14, 2022 Tr. at 3-4.) The magistrate did not ask Mother's counsel to elaborate as to why. Significantly, Mother's previously appointed counsel did not move to withdraw at the January 14th hearing. Nor does the record indicate he filed a written request to withdraw as Mother's counsel after the January 7th hearing. Nonetheless, the magistrate declined to reappoint Mother's counsel to the new case because he refused to accept service of the second refiled complaint at the January 14th hearing. (Jan. 14, 2022 Tr. at 5.)

{¶ 12} Although neither parent was served with the second refiled complaint and neither parent was represented by counsel at the January 14th hearing, the magistrate proceeded on case No. 22JU-0421 anyway. (*See* Jan. 14, 2022 Tr. at 4-6.) A TOC for B.H.

---

[2] Father's appointed counsel was permitted to withdraw from case No. 21JU-10305 on January 12, 2022. (Jan. 12, 2022 Mag.'s Decision and Entry.) At the time of the January 14, 2022 hearing on the second refiled complaint, however, no decision permitting Mother's counsel to withdraw had been entered by the juvenile court.

was granted to FCCS and the case was set for a final hearing on the second refiled complaint for February 18, 2022. (Jan. 14, 2022 at Tr. 4-6.)

{¶ 13} Mother did not appear at the February 18, 2022 hearing on the second refiled complaint. Significantly, counsel still had not been appointed to represent Mother in case No. 22JU-0421 at that time. At the February 18th hearing, the prosecutor told the presiding magistrate the matter needed to be continued because the required parties—Mother and Father—had not been served with the second refiled complaint. (*See* Feb. 18, 2022 Tr. at 2.) The GAL also indicated both parents were "missing in action" and opined that service by publication on the parents would be necessary. (Feb. 18, 2022 Tr. at 2.) The hearing on the second refiled complaint was continued to April 1, 2022.

{¶ 14} Neither parent appeared at the April 1, 2022 hearing because both were incarcerated in the local county jail. (Apr. 1, 2022 Tr. at 2-3.) In fact, both parents were served with the second refiled complaint by the local county sheriff on March 21, 2022 while they were in jail. (Apr. 1, 2022 Tr. at 3.) Although neither parent was represented by counsel in case No. 22JU-0421, the magistrate found the second refiled complaint to be uncontested; proceeded on case No. 22JU-0421; found B.H. to be an abused, neglected, and dependent child under the five causes of action listed in the second refiled complaint; granted TCC of B.H. to FCCS; approved and adopted a case plan; and scheduled an annual review hearing for July 22, 2022.[3] (Apr. 1, 2022 Tr. at 3-7; May 5, 2022 Jgmt. Entry.) Mother did not appeal from the juvenile court's May 5, 2022 judgment adopting the magistrate's findings and disposition.

{¶ 15} On June 17, 2022, FCCS filed a motion for permanent court commitment ("PCC"). Two virtual hearings on that motion were held, but the matter was ultimately set for an in-person evidentiary hearing on September 20, 2022. (*See* July 21, 2022 Tr. at 4; Aug. 29, 2022 Tr. at 3.) The record indicates that Mother—who remained unrepresented by counsel in case No. 22JU-0421—attempted to participate in the second hearing on August 29, 2022 but called in shortly after the virtual hearing concluded. (*See* Sept. 20, 2022 Tr. at 4-5.) Although not recorded, the magistrate later stated that she "gave [Mother and Father] the number for the court[-]appointed attorney's office, begged them to get

---

[3] The third refiled complaint was filed on March 31, 2022 in Franklin C.P. No. 22JU-3290 due to the 90-day rule. Because the magistrate proceeded on the second refiled complaint under case No. 22JU-0421 at the April 1st hearing, the third refiled complaint was dismissed and case No. 22JU-3290 was closed.

counsel[,]" and told the parents their parental rights could be permanently terminated if they failed to do so. (*See* Sept. 20, 2022 Tr. at 5.)

{¶ 16} On September 8, 2022, juvenile court staff requested the clerk send all parties notice of the September 20th hearing, and the docket suggests such notice was sent via regular U.S. mail. (*See* Sept. 8, 2022 Entries on Docket in Case No. 22JU-0421.) Of note, no counsel of record was entered for Mother in case No. 22JU-0421 at that time. While the record does not indicate whether the clerk sent notice of the September 2022 hearing to Mother at multiple addresses, it does show notice was sent to Mother at the local jail but returned as undeliverable. (*See* Sept. 20, 2022 Hearing Notice Return.) On that point, we note that although Mother was believed to be in the local jail in April 2022 (*see* Apr. 1, 2022 Tr. at 2-3), she was later served by a process server at a residential address in July 2022 (*see* Aug. 1, 2022 Personal Service Return) and reported as calling in and speaking with the magistrate on August 29, 2022 (*see* Sept. 20, 2022 Tr. at 4-5). That is to say, nothing in the record suggests Mother was known to be in jail when the clerk mailed Mother's notice of the permanent custody hearing to the jail's address in September 2022.

{¶ 17} On September 20, 2022, a juvenile court magistrate held the final hearing on the permanent custody motion. Mother was not present and remained unrepresented by counsel for the evidentiary hearing. The FCCS caseworker stated it was her understanding that the magistrate orally informed Mother of the "date and time" of the September 2022 hearing when Mother called in after the August 29th virtual hearing concluded. (Sept. 20, 2022 Tr. At 4-5.) The magistrate did not explicitly attest to providing such notice to Mother, however, and the magistrate's conversation with Mother was not recorded. (Sept. 20, 2022 Tr. At 5.) Furthermore, nothing in the record suggests the magistrate orally informed Mother of the location for the September 2022 hearing, which is significant since most of the prior hearings were conducted virtually. But, even if the magistrate had, oral notice of a final hearing on a motion that would permanently divest a parent of all custodial rights would not satisfy the notice requirements of Juv.R. 20 and Civ.R. 5.

{¶ 18} Notwithstanding obvious potential issues regarding the adequacy of Mother's notice, Mother's absence, and Mother's lack of legal representation, the magistrate nonetheless concluded "service [had been] perfected" on Mother and proceeded to an uncontested adjudication hearing on the PCC motion. (Sept. 20, 2022 Tr. at 6.) At the

hearing, the magistrate heard testimony from the FCCS caseworker assigned to B.H., Andrew Banker, and B.H.'s GAL, Jinx Beachler. Following the presentation of testimony and evidence, the magistrate granted FCCS's motion, committed B.H. to the permanent custody of FCCS, and divested Mother and Father of any and all parental rights, privileges, and obligations to B.H. (Sept. 20, 2022 Tr. at 32-36.) Mother did not file any objections to the magistrate's decision.

{¶ 19} On October 5, 2022, the juvenile court entered a judgment approving and adopting the magistrate's decision recommending the juvenile court grant permanent custody of B.H. to FCCS and permanently terminate Mother's parental rights. After that final judgment was entered, a public defender was appointed as Mother's appellate counsel.

{¶ 20} Mother timely appealed from the juvenile court's October 5, 2022 judgment and asserts the following sole assignment of error for our review:

> THE JUVENILE COURT ERRED BY FAILING TO MAKE A PROPER INQUIRY INTO WHETHER THE APPELLANT-MOTHER HAD KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVED HER RIGHTS TO COURT-APPOINTED COUNSEL ON THE MOTION FOR PERMANENT CUSTODY, AND THE JUVENILE COURT FURTHER ERRED BY FAILING TO REAPPOINT COUNSEL TO REPRESENT THE APPELLANT-MOTHER ON THE MOTION FOR PERMANENT CUSTODY, WHERE THE RECORD DID NOT SHOW THAT THE APPELLANT-MOTHER HAD EVER KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVED HER RIGHTS TO COURT-APPOINTED COUNSEL. THIS ERROR DEPRIVED APPELLANT-MOTHER OF HER RIGHT TO COUNSEL IN THE PERMANENT CUSTODY PROCEEDING AND CONSTITUTES REVERSIBLE ERROR.

{¶ 21} Before turning to the merits of this assignment of error, we first address the contention of appellee, FCCS, that Mother's notice of appeal was not timely filed under App.R. 4. Although FCCS correctly notes that App.R. 4(A) required Mother's notice of appeal to be filed within 30 days of the juvenile court's October 5, 2022 final judgment entry, its claim that Mother failed to satisfy the rule's filing deadline is not well-taken. (*See* Appellee's Brief at 7-9.) Under App.R. 4(A), Mother was required to file her notice of appeal from the October 5, 2022 judgment by November 4, 2022. Because Mother filed her notice of appeal on November 3, 2022, she clearly satisfied App.R. 4(A)'s timing requirement.

## II. ANALYSIS

{¶ 22} A parent's right to raise a child is an essential and basic civil right. *In re Hayes*, 79 Ohio St.3d 46, 48 (1997); *In re Murray*, 52 Ohio St.3d 155, 157 (1990); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Indeed, it is well-established that "[p]arents have a constitutionally-protected fundamental interest in the care, custody, and management of their children." *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

{¶ 23} Parental rights are not absolute, however, and a parent's natural rights are always subject to the ultimate welfare of the child. *See, e.g.*, *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40-41. Thus, while the state's power to terminate parental rights is limited and should be a last resort, "such an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." (Quotations omitted.) *Id.* at ¶ 41, quoting *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979), quoting R.C. 2151.01(A). In Ohio, the termination of parental rights is governed by R.C. 2151.414. *See, e.g.*, *In re G.E.H.*, 10th Dist. No. 15AP-966, 2016-Ohio-3535, ¶ 52.

{¶ 24} For good reason, the permanent termination of parental rights has been described as " 'the family law equivalent of the death penalty in a criminal case.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 19, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). *See also In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, ¶ 14. Accordingly, a parent "must be given every procedural and substantive protection the law allows prior to parental rights being [permanently] terminated." (Citation omitted.) *In re J.Z.*, 10th Dist. No. 05AP-8, 2005-Ohio-3285, ¶ 9. *See also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."). And, in cases involving the permanent termination of parental rights, due process requires " 'a hearing upon adequate notice, assistance of counsel, and under most circumstances, the right to be present at the hearing.' " *In re M.W.*, 10th Dist. No. 07AP-529, 2007-Ohio-6506, ¶ 79, quoting *J.Z.* at ¶ 9, citing *In re Thompson*, 10th Dist. No. 00AP-1358, 2001 Ohio App. LEXIS 1890 (Apr. 26, 2001).

{¶ 25} In this case, Mother does not challenge the merits of the juvenile court's October 5, 2022 decision awarding permanent custody of B.H. to FCCS. Instead, she contends the procedure through which that decision was reached was fundamentally unfair

and constituted plain error. More precisely, Mother takes issue with the magistrate's failure to appoint counsel for her in case No. 22JU-0421. On that point, we note that Mother was represented by appointed counsel in case Nos. 21JU-7393 and 21JU-10305—prior cases concerning the custody of B.H.—but the magistrate expressly declined to reappoint Mother's previous attorney in case No. 22JU-0421 and did not appoint another attorney to represent Mother in connection with the proceedings of that case. Mother argues on appeal that the magistrate erred in proceeding with the September 20, 2022 permanent custody hearing because (1) Mother was not present; (2) Mother was not represented by counsel at that proceeding; and (3) Mother had not knowingly, intelligently, and voluntarily waived her right to counsel at that hearing.

{¶ 26} Mother concedes in her brief that she is limited by operation of Juv.R. 40(D)(3)(b)(iv) to claims of plain error on appeal because she did not object to the magistrate's decision on FCCS's permanent custody motion in the court below. (Appellant's Brief at 22-23.) In a civil proceeding, plain error is limited to "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material, adverse effect on the character of, and public confidence in, judicial proceedings." *In re Moore*, 10th Dist. No. 04AP-299, 2005-Ohio-747, ¶ 8, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). " 'Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *In re M.A.*, 10th Dist. No. 20AP-345, 2021-Ohio-1078, ¶ 18, quoting *Tucker v. Hines*, 10th Dist. No. 18AP-375, 2020-Ohio-1086, ¶ 7, citing *State v. Phillips*, 74 Ohio St.3d 72, 83 (1995).

### A. Mother had a right to court-appointed counsel at the September 20, 2022 hearing.

{¶ 27} It is well-established that a parent has the right to counsel in proceedings where the state seeks to involuntarily terminate a party's parental rights. *See, e.g.*, *In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, syllabus. And, it is axiomatic that this right is not diminished by a parent's indigent status. Indeed, the Supreme Court of Ohio has held that "[i]n actions instituted by the state to force the permanent, involuntary termination of parental rights, the United States and Ohio Constitutions' guarantees of due process and equal protection of the law require that indigent parents be provided with counsel and a transcript at public expense for appeals as of right." *State ex rel. Heller v. Miller*, 61 Ohio

St.2d 6 (1980), paragraph two of the syllabus. *See also In re Miller*, 12 Ohio St.3d 40, 41 (1984); *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). *Compare Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 30 (1981) (explicitly acknowledging *Heller* as recognizing a right beyond what is required by the United States Constitution).

{¶ 28} This court has applied *Heller* to "find that under the Ohio Constitution a right exists for an indigent parent to be appointed counsel as of right in a [parental rights termination] proceeding." (Citations omitted.) *In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, ¶ 34. Moreover, in Ohio, a parent in permanent custody proceedings is statutorily entitled to representation by legal counsel at all stages of the proceedings before the juvenile court. R.C. 2151.352. *See also In re Ja.S.*, 10th Dist. No. 22AP-2, 2023-Ohio-722, ¶ 19. The right to counsel arises "when a person becomes a party to a juvenile court proceeding," and includes "the right to [be] appointed counsel if indigent." Juv.R. 4(A). *See also Ja.S.* at ¶ 19. *See generally In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500.

{¶ 29} With these principles in mind, it is clear that Mother had a right to have her interests represented by counsel at the September 20, 2022 permanent custody proceeding. Moreover, the record before us establishes the juvenile court had already determined that Mother was indigent and appointed counsel for Mother in the two preceding custody cases regarding B.H. that were dismissed due to the 90-day rule. (*See, e.g.*, Aug. 8, 2021 Entry in Case No. 21JU-7393; Nov. 1, 2021 Financial Disclosure Form in Case No. 21JU-7393; Nov. 2, 2021 Entry in Case No. 21JU-10305; Feb. 17, 2022 Financial Disclosure Form in Case No. 21JU-10305.) Taken together, then, we find Mother was entitled to the representation of appointed counsel at the September 20th hearing.

{¶ 30} It is also apparent from the record before us that the juvenile court never appointed any counsel for Mother in case No. 22JU-0421 and Mother was not represented by any attorney at the September 20, 2022 hearing. Nothing in the record below suggests that counsel was not appointed because Mother retained private counsel, was no longer indigent, or had requested that counsel not be appointed.

{¶ 31} On appeal, FCCS posits that Mother's previously appointed counsel, Attorney Hoffman—who represented mother in case Nos. 21JU-7393 and 21JU-10305—asked to withdraw as Mother's counsel "due to a lack of communication" with Mother. (Appellee's Brief at 9-11.) But, FCCS does not point us to any place in the record that supports its

contention. In fact, to the contrary, the record establishes that Attorney Hoffman only sought to withdraw as Mother's counsel after the magistrate indicated at the January 7, 2022 hearing she would proceed as uncontested on the first refiled complaint even though Attorney Hoffman explicitly stated Mother contested the allegations set forth therein. (Jan. 7, 2022 at 11-13.) And, even then, the magistrate refused to let Attorney Hoffman withdraw at that hearing. (Jan. 7, 2022 Tr. at 15.) Notably, too, the record does not suggest Attorney Hoffman ever filed a motion to withdraw as Mother's counsel even though the magistrate stated he could do so after the January 7th hearing concluded. (*See* Jan. 7, 2022 Tr. at 15.) Instead, Attorney Hoffman's representation of Mother ended at the January 14, 2022 hearing when the magistrate refused to reappoint Attorney Hoffman as Mother's counsel in case No. 22JU-0421 because he would not accept service of the second refiled complaint. (Jan. 14, 2022 Tr. at 3-5. *See also* Feb. 17, 2022 Mot. for Approval of Payment of Appointed Counsel Fees and Expenses.)

{¶ 32} While it is true that Attorney Hoffman's communications with Mother were limited by virtue of Mother being either in a residential treatment facility or incarcerated in the two months preceding the January 7, 2022 hearing (*see, e.g.*, Jan. 7, 2022 Tr. at 6-8), Attorney Hoffman never requested, as FCCS alleges on appeal, to withdraw due to lack of communication. Rather, he asked the magistrate to continue the January 7th hearing in order to make contact with Mother. (Jan. 7, 2022 Tr. at 6-7.) Accordingly, FCCS's arguments on this issue are not well-taken. (*See* Appellee's Brief at 9-11.)

### B. Mother did not waive her right to court-appointed counsel at the September 20, 2022 hearing.

{¶ 33} Because it is undisputed that Mother was not present or represented by counsel at the September 20, 2022 hearing concerning FCCS's permanent custody motion and the permanent termination of Mother's parental rights, the key issue before us on appeal is whether Mother sufficiently waived her right to counsel at that hearing. For the reasons that follow, we conclude she did not.

{¶ 34} A parent cannot be deprived of the right to counsel—including the right to appointed counsel, if indigent—at a parental rights termination hearing "unless the court finds that the parent has knowingly waived the right to counsel." *R.K.*, 2018-Ohio-23 at syllabus. Moreover, "[w]aiver of counsel cannot be inferred from the unexplained failure of the parent to appear at a hearing." *Id.*

{¶ 35} In applying the holding of *R.K.*, this court has held that a court considering whether a parent has waived their right to counsel must engage in "real consideration and discussion" of the alleged waiver. (Internal quotations omitted.) *Ja.S.*, 2023-Ohio-722 at ¶ 21, quoting *In re O.M.S-W.*, 10th Dist. No. 19AP-269, 2020-Ohio-201, ¶ 3, quoting *R.K.* at ¶ 7. And, we have explained that "[t]he aim of that careful examination must be to determine whether the right to counsel has been waived voluntarily, knowingly, and intelligently." (Internal quotations omitted.) *Id.* In other words, "the juvenile court must determine whether the parent has intentionally relinquished or abandoned a known right." *Id.* at ¶ 21, citing *O.M.S-W.* at ¶ 3, citing *R.K.* at ¶ 5. *See also W.W.E.*, 2016-Ohio-4552 at ¶ 36 ("[W]hen reviewing a waiver of the right to counsel in the context of a permanent termination of parental rights, courts in Ohio have examined whether the waiver was knowingly, intelligently, and voluntarily made") (citations omitted); *In re W.J.*, 3d Dist. No. 8-21-29, 2022-Ohio-2449, ¶ 34.

{¶ 36} Having reviewed the record, we find the trial court erred and deprived Mother of her right to counsel at the September 20, 2022 parental rights termination hearing. At the outset, we note that the magistrate did not engage in any waiver analysis or make a finding that mother had knowingly, voluntarily, and intelligently waived her right to counsel when the magistrate proceeded with that hearing. Nor did the magistrate engage in "real consideration and discussion" of such waiver when she expressly declined to reappoint Mother's previously appointed counsel in case No. 22JU-0421 at the January 14th hearing. (*See* Jan. 14, 2022 Tr. at 5.) Instead, the magistrate stated, without explanation, that she could not reappoint Mother's previously appointed counsel because he would not accept service of the second refiled complaint. (Jan. 14, 2022 Tr. at 5.) And, although the magistrate acknowledged Mother was not present and was not represented by counsel at the September 20th parental rights termination hearing, the magistrate proceeded anyway—notwithstanding Mother's lack of representation and the absence of any sufficient waiver from Mother of her right to counsel at that hearing.

{¶ 37} Because *R.K.* stands for the proposition that a parent cannot be deprived of the right to counsel in a permanent custody proceeding unless the trial court finds the parent has knowingly, intelligently, and voluntarily waived that right, we find the record before us to be insufficient for the juvenile court to conclude that Mother waived her right

to counsel at the September 20, 2022 hearing in case No. 22JU-0421. We further conclude that the juvenile court erred in failing to either reappoint Mother's previous counsel or appoint new counsel for Mother after refusing to reappoint Mother's previously appointed counsel at the January 14, 2022 hearing.

{¶ 38} Although the record contains no meaningful explanation as to why counsel was not appointed for Mother in case No. 22JU-0421, we note that Mother's lack of legal representation was briefly addressed at the September 20, 2022 hearing by the magistrate, who recounted her unrecorded conversation with Mother on August 29, 2022 as follows:

> After the [August 29, 2022 virtual] hearing was over, parents did come into -- I think they came in via telephone. I didn't tape it because it was after everyone had left and I essentially begged them to -- I gave them the number for the court appointed attorney's office, begged them to get counsel because if they did not, there's a possibility that I could terminate their parental rights, which would [be] permanent in nature. And I think I immediately asked * * * my court officer to tell the [FCCS] that that happened and also, I -- I think I told [the GAL], I can't remember –[.]

(Sept. 20, 2022 Tr. at 5.) Of note, the GAL denied hearing about this ex parte encounter from the magistrate, instead stating she learned about it from B.H.'s foster mother. (Sept. 20, 2022 Tr. at 5.)

{¶ 39} FCCS argues on appeal that Mother knowingly, intelligently, and voluntarily waived her right to court-appointed counsel at the September 20, 2022 hearing on its permanent custody motion because Mother did not appear at that proceeding and failed to request the appointment of counsel in connection with case No. 22JU-0421. (Appellee's Brief at 11-12.) These contentions are not well-taken.

{¶ 40} Regarding Mother's failure to appear at the September 20th permanent custody hearing, FCCS notes that Mother "was served notice of the PCC hearing at her place of residence on July 9, 2022 and July 30, 2022" and that "publication was made on August 3, 2022[] notifying any other interested parties of the hearing and the right to counsel." (Appellee's Brief at 11.) But these dates of service are irrelevant to Mother's absence at the ***September 20th*** hearing. On July 9th, Mother was served with notice of a virtual hearing scheduled for July 21, 2022. (*See* June 27, 2022 Summons and Order to Appear; June 29, 2022 Notice of Hearing; July 12, 2022 Personal Service Return.) On July 30th, Mother was

served with notice of a virtual hearing scheduled for August 29, 2022. (*See* July 21, 2022 Summons and Order to Appeal; Aug. 1, 2022 Personal Service Return.) Service by publication was requested for "John Doe, Alleged Father" and, in any event, it likewise noticed all interested parties of the August 29th—not September 20th—hearing. (*See* July 22, 2022 Request for Service by Publication; Aug. 3, 2022 Proof of Publication.) Moreover, as described above, Mother *did* attempt to attend the August 29th virtual hearing but called in after it had already concluded. (*See* Sept. 20, 2022 Tr. at 4-5.)

{¶ 41} For these reasons, we reject FCCS's contention that Mother's failure to appear at the September 20, 2022 hearing had any bearing on the issue of whether Mother sufficiently waived her right to appointed counsel at that hearing. And, indeed, while not necessary to our resolution of this case, we emphasize the uncertainty in the record, as previously described above, as to whether Mother was even properly served with adequate notice of the September 20, 2022 hearing. As FCCS points out, notice of the July and August 2022 virtual hearings was successfully served upon Mother by a process server. But a process server was not used to serve Mother with notice of the in-person permanent custody hearing scheduled for September 20, 2022. Similarly, service by publication was issued for the July and August 2022 virtual hearings, but not the September 20, 2022 permanent custody hearing relevant to this appeal. We do not believe the record clearly establishes that Mother was served, in accordance with Juv.R. 20 and Civ.R. 5, with notice of the September 20th hearing at her place of residence. In fact, the record only clearly establishes that notice of the September 20th hearing was sent to Mother at the local jail but returned as undeliverable because Mother was not in jail at that time. (*See* Sept. 20, 2022 Hearing Notice Returned.)

{¶ 42} FCCS also argues on appeal that we should find Mother knowingly, intelligently, and voluntarily waived her right to appointed counsel at the September 20, 2022 permanent custody hearing based on the magistrate's description of her off-the-record conversation with Mother on August 29, 2022. (Appellee's Brief at 11-12. *See* Sept. 20, 2022 Tr. at 5.) But FCCS cites to no legal authority in its brief as support for its contention that an off-the-record conversation about the importance of counsel equates to a party's knowing, intelligent, and voluntary waiver of their right to counsel under the circumstances presented here. Thus, we reject such suggestion.

{¶ 43} To the extent FCCS suggests Mother could not be deprived of her right to counsel because she had not yet appeared or otherwise failed to exercise her right to ask for appointed counsel in the second refiled action, case No. 22JU-0421, such argument "ignores the practical realities of the case history." *See Ja.S.*, 2023-Ohio-722 at ¶ 23. This matter was initiated in July 2021 under case No. 21JU-7393. Three days later, on August 2, 2021, the juvenile court appointed Attorney Hoffman to represent Mother. (*See* Aug. 2, 2021 Mag.'s Order; Aug. 2, 2021 Tr. at 1-2; Aug. 9, 2021 Entry.) Of note, Attorney Hoffman—having been appointed as counsel for Mother at some point prior to the initial August 2, 2021 hearing—appeared with and represented Mother at the August 2, 2021 hearing even though nothing in the record before us suggests Mother ever filed a motion requesting the appointment of counsel in that case. Because of the 90-day rule, the initial case was dismissed and FCCS filed its first refiled complaint in October 2021 under case No. 21JU-10305. Without Mother's request, the juvenile court appointed the same attorney to represent Mother in that case. (*See* Oct. 21, 2021 Mag.'s Order; Nov. 2, 2021 Entry.)

{¶ 44} As previously described, on January 7, 2022, the juvenile court magistrate proceeded—over the state's objection and despite concerns raised by both parents' counsel—as uncontested on the first refiled complaint under case No. 21JU-10305. Mother was not present, and the magistrate refused to allow Attorney Hoffman—who told the magistrate he could not proceed as uncontested because Mother had conveyed to him that she did not intend to go uncontested—to withdraw as Mother's appointed counsel that day. (*See* Jan. 7, 2022 Tr. at 13-18.) After the January 7th hearing, Attorney Hoffman did not withdraw as Mother's appointed counsel. At the January 14, 2022 hearing on FCCS's second refiled complaint under case No. 22JU-0421, the magistrate refused to reappoint Attorney Hoffman as Mother's counsel because he would not accept service of the second refiled complaint in Mother's absence. And, most significantly, the juvenile court never appointed any other attorney to represent Mother in connection with that case.

{¶ 45} As this court has repeatedly and recently observed, "[t]he refiling of complaints in permanent custody proceedings to comply with the 90-day requirement of R.C. 2151.35(B)(1) is common practice." *Ja.S.* at ¶ 24. *See also In re Lu.M-R.*, 10th Dist. No. 21AP-681, 2022-Ohio-4779, ¶ 19 (when a complaint is dismissed without prejudice and refiled to comply with the 90-day requirement of R.C. 2151.35(B)(1), the juvenile court

retains jurisdiction to take up the refiled complaint, and, in the case of "multiple dismiss-refile situations," the time limits on temporary custody run continuously from the date the child is first taken into emergency custody).

{¶ 46} Based on the procedural posture of this matter, we conclude that Mother could have reasonably relied on having appointed counsel to represent her for the duration of the proceedings related to B.H. without needing to take any affirmative action to secure appointed counsel for herself. And, we note that FCCS does not cite to any authority—binding or otherwise—to support the claim that Mother was required to "affirmatively act to secure her right to counsel at each refiling where the purpose of the refiling is to comply with the 90-day requirement of R.C. 2151.35(B)(1)." *Ja.S.* at ¶ 24.

{¶ 47} For these reasons, we construe R.C. 2151.352, Juv.R. 4 (A), and *R.K.* as applying to Mother in the refiled actions. *See Ja.S.* at ¶ 24. Therefore, we find Mother was entitled to representation by legal counsel at the September 20, 2022 hearing, and the juvenile court plainly erred by depriving her of that right when it held the final hearing and permanently terminated Mother's parental rights in Mother's absence and without any representation by counsel. Accordingly, Mother's sole assignment of error is sustained.

## III. CONCLUSION

{¶ 48} Having sustained Mother's sole assignment of error, we reverse the October 5, 2022 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, and remand this matter to that court with instructions to appoint counsel for Mother before proceeding on any other matter related to the custody of B.H. and for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

LUPER SCHUSTER and LELAND, JJ., concur.